**In re Esther Merino DORE, Debtor.**

**Bankruptcy No. 90–06903–H7.**

United States Bankruptcy Court, S.D. California.

Feb. 8, 1991.

Wells B. Lyman, La Mesa, Cal., for debtor.

Barry J. Schwartz, San Diego, Cal., for Mission Federal Credit Union.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

Presently before the court is the motion of debtor Esther Merino Dore ("debtor") to avoid the judicial lien of Mission Federal Credit Union ("Mission Federal") pursuant to 11 U.S.C. § 522(f)(1). At issue is the amount of the homestead exemption available to debtor. Debtor claims she is entitled to a $45,000 homestead exemption because she cares for her adult son, while Mission Federal contends that debtor is only entitled to a $30,000 homestead because she resides in the house by herself and not as part of a "family unit" as defined by California statute.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (K).

## FACTS

On June 29, 1990, Mission Federal obtained a municipal court money judgment against James Dore and debtor based upon the breach of an unsecured loan in the amount of $6,394.41. Pursuant to said judgment, the municipal court issued and Mission Federal recorded an abstract of

judgment against the subject real property in the amount of $6,394.41.

Thereafter, debtor filed a petition under Chapter 7 of the Bankruptcy Code on August 14, 1990. Debtor's schedules revealed a 1/2 joint tenancy interest in real property located at 1163 North Third Street, El Cajon, California. The market value of said property was listed at $115,000. Three trust deeds are secured by the real property in the amount of $10,163.00, $18,770.00 and $9,580.00, respectively. Debtor indicated that a homestead had been filed, and claimed an exemption of $45,000 pursuant to California Code of Civil Procedure § 704.730.

On October 10, 1990, debtor filed her motion to avoid the judicial lien of Mission Federal pursuant to § 522(f), arguing that it impaired a $45,000 state homestead exemption to which she is entitled. The motion is completely devoid of any competent evidence, and simply states:

> The market value of the residence is $115,000.00 and the amount of the claim is for $6,394.41. Said property has been exempted pursuant to CCP 704.710 [sic] and said exempted property is used primarily for the debtor's personal everyday use.

No other information is given regarding how the valuation of the property was arrived at, the total amount of the liens against the property, and how the exemption claimed by debtor was impaired.

Mission Federal timely filed opposition to the motion and essentially argues that there exists sufficient unencumbered equity in the property to protect the debtor's claim to the homestead exemption as well as the judicial lien of Mission Federal. This equity existed either because the fair market value of the real property was greater than the value alleged by debtor, or because debtor was not entitled to claim a $45,000 homestead exemption.

Debtor filed supplemental points and authorities in support of her motion and indicated that "debtor resides in the subject residence with her son, who is unemployed and unable to provide for hiss [sic] independent needs."

The hearing on the motion, held November 16, 1990, focused on the fair market value of the real property, and the amount of the exemption available to debtor. Counsel were invited to set an evidentiary hearing if they needed to resolve the dispute in valuation, but when the court issued its tentative decision that the homestead entitlement was $30,000 rather than the $45,000 claimed by the debtor, Mission Federal indicated that it would agree to the $115,000 valuation.

Counsel for debtor requested additional time to brief the issue of the amount of the homestead exemption, and to particularly focus on the issue of the § 704.710 definition of "family unit" under subsection (b)(2)(D) specifically dealing with the definition of an "unmarried relative ... who has attained the age of majority and is unable to take care of or support himself or herself." The matter was taken under submission to allow debtor's counsel to brief the matter further. No briefs have been filed on behalf of debtor.

## DISCUSSION

11 U.S.C. § 522(f)(1) provides that a debtor may avoid the fixing of a judicial lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled.

■ The Bankruptcy Appellate Panel, in *In re Galvan*, 110 B.R. 446 (9th Cir. BAP 1990), set forth the procedure for establishing whether a particular judicial lien is avoidable. First, the court must determine whether the debtor would have been entitled to claim an exemption in the absence of the lien, since exemptions are available only to the extent that the debtor possesses equity in the property sought to be exempted. *Id.* at 450. To do this, the court must calculate the extent to which the debtor would possess equity in the absence of the judicial lien at issue. *Id.*

■ Equity is determined by deducting the security interests in the property sought to be exempted (exclusive of the judicial lien at issue and the undersecured

interests, if any, which are junior in priority to the judicial lien) from the value of such property. *Id.* The value of the property is determined at the time of the filing. *In re Seyfert*, 97 B.R. 590 (Bankr.S.D.Cal. 1989). The exemption available for use by the debtor is equal to the lesser of 1) the equity of the debtor in the property sought to be exempted or 2) the maximum value of the exemption claimed. *Galvan*, 110 B.R. at 450.

■ The second step is to determine the extent to which the available exemption is impaired by the judicial lien. This requires that the court:

> [S]ubtract the allowed amount of the judicial lien from the equity determined to exist.... If after subtracting the lien from such equity there remains a property interest which is greater in value than the available exemption, no impairment exists. If the deduction leaves equity which is less than the available exemption, impairment arises to the extent of the deficiency. If no equity remains, impairment of the available exemption is complete. *Id.*

The judicial lien is avoidable to the extent to which the judicial lien is determined to impair the available exemption. *Id.*

In order to undertake such an analysis, this court must first determine the amount of the exemption available to the debtor. The Bankruptcy Appellate Panel recently found in *In re McFall*, 112 B.R. 336, 341 (9th Cir. BAP 1990), that there are no California cases which discuss the meaning of the term "family unit" as used in § 704.710. It is clear however that the statutory scheme, when read in conjunction with the Bankruptcy Code, plainly indicates that debtor is only entitled to the $30,000 exemption because she and her son are not a "family unit".

The version of California Code of Civil Procedure § 704.730(a) in effect at the time of the filing provides:

> The amount of the homestead exemption is one of the following:
>
> (1) Thirty thousand dollars ($30,000) unless the judgment debtor or spouse of the judgment debtor who resides in the homestead is a person described in paragraph (2) or (3).
>
> (2) Forty-five thousand dollars ($45,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead *a member of a family unit,* and there is at least one member of the family unit who owns no interest in the homestead or whose only interest in the homestead is a community property interest with the judgment debtor.
>
> (3) Seventy-five thousand dollars ($75,-000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead any one of the following: (A) A person 65 years of age or older. (B) A person physically or mentally disabled and as a result of that disability is unable to engage in substantial gainful employment.
>
> (emphasis added)

Section 704.710(b)(2)(D) defines "family unit" as including "an unmarried relative ... who has attained the age of majority and is unable to take care of or support himself or herself" and is cared for or maintained by the judgment debtor in the homestead.

This statute is derived from former Civil Code § 1261, enacted in 1872, which defined "head of a family" for purposes of the homestead exemption. Section 1261 included in its definition of "head of a family" an "unmarried sister, or any other of the relatives ... who have attained the age of majority and are unable to take care of or support themselves." This is the first instance where qualification as "head of a family" included one who has under their care and maintenance an adult relative who was unable to take care of or support themselves. Both of the preceding statutes, upon which § 1261 was based, made no such provision.

Section 10 of Chapter 31 of the Laws of the State of California, passed April 21, 1851, stated that the homestead exemption did not extend to "unmarried persons, except when they have charge of minor

brothers, or sisters, or both, or brothers' or sisters' minor children, or a mother, or unmarried sisters living in the house with them." This Act was amended in 1862 by Chapter CCCXCVI, section 3 which stated:

> No unmarried person shall be entitled to select or hold a homestead ... unless such person has the care and maintenance of his or her minor child, or of a minor brother or sister, or a minor child of a deceased brother or sister, or of a father or mother, or of a grandfather or grandmother, or of an unmarried sister, then residing on the homestead property with such person.

The progression in the law went from the care and maintenance of a minor child (presumed at law to be incapable of support) to care and maintenance of an unmarried adult unable to take care of or support themselves. Thus, the operative language "attained the age of majority and are unable to take care of or support" remains virtually unchanged since its first appearance in 1872.

Given this, the meaning attached to "unable" becomes critical since an appropriate reading indicates that the individual cared for must be unable to care for or support themselves.

The prefix "un" is placed before past passive participles to indicate the absence of the condition or state expressed by the participle. *Tomlinson v. Ayres*, 117 Cal. 568, 571, 49 P. 717, 718 (1897). Thus, the person is not able or has an inability to act. Inability means quality or state of being unable; lack of ability; want of sufficient power, strength, resources or capacity. *Telefilm, Inc. v. Superior Court*, 33 Cal.2d 289, 292, 201 P.2d 811 (1949).

In the *Oxford English Dictionary* 851 (2nd ed., Vol. XVIII 1989), "unable" is defined as:

1. Not able, not having ability or power, to do or perform ... something specified.

    \*    \*    \*    \*    \*    \*

2. Of persons: Lacking ability in some implied respect; incompetent, inefficient.

    \*    \*    \*    \*    \*    \*

3. Of persons: Incapable of, not qualified for, some position.

    \*    \*    \*    \*    \*    \*

5. Lacking in physical ability or strength; incapable of much bodily exertion; weak, feeble.

These definitions are consistent with the manner in which "unable" is used in the statute. More important, each of the qualifying classes of persons described in the statute are persons who are likely unable to care for or support themselves, e.g. minors, unmarried women (did not have the same rights as a man, and deemed legally incapable of acting in 1872), and elderly.

Further, "incapable" as used in the Code of Civil Procedure, refers to a person who, though not insane, is by reason of age, disease, weakness of mind, or from other cause, unable, unassisted, to properly manage and take care of himself or his property. *Matter of Daniels*, 140 Cal. 335, 73 P. 1053 (1903). Incapacity is a legal disability, such as infancy or insanity, *Parker v. Bowron*, 40 Cal.2d 344, 254 P.2d 6 (1953), and is substantially the equivalent of incompetency, *In re Kohler*, 79 Cal. 313, 21 P. 758 (1899), and may not include mere inability. *Autry v. Republic Productions, Inc.*, 30 Cal.2d 144, 180 P.2d 888 (1947).

█ Consistently "unable" and its derivations have been used to define persons physically or mentally incapable of caring for themselves, or suffering from a legal disability. Given the structure of the statute, and the nature of the persons described therein, no support can be found for a construction of § 704.710(b)(2)(D) which will permit the inclusion of one who is merely unemployed, within the definition of one who is "unable to take care of or support themselves."

No evidence was presented by debtor to show that her son was permanently unemployed, or had no reasonable prospect for future employment. Further, it would be unreasonable to allow a greater homestead

exemption based upon a condition that is so easily changed, e.g. employment status.

Exemption rights are fixed as of the date of the petition. *In re Whitman*, 106 B.R. 654 (Bankr.S.D.Cal.1989). There was no evidence presented regarding employment status on the date of the petition. Further, it would be an inequitable result for the debtor to receive a windfall (increased homestead exemption) when it is entirely conceivable that her son could have obtained employment immediately after the filing of the petition. Debtor is not part of a family unit, and is therefore entitled to a homestead exemption in the amount of $30,000.

The fair market value of the real property at the time of the filing of the petition was $115,000. The equity in the property is $76,487 as shown below:

| | |
|---|---|
| Fair Market Value | $115,000 |
| First Trust Deed | −10,163 |
| Second Trust Deed | −18,770 |
| Third Trust Deed | −9,580 |
| Equity | $ 76,487 |

As calculated by *Galvan*, the available exemption is equal to the lesser of the equity of the debtor in the property sought to be exempted, or the maximum value of the exemption claimed. In this case the lesser sum is the homestead exemption in the amount of $30,000 which is the available exemption.

To determine the extent to which the available exemption is impaired by the judicial lien, this court must subtract the allowed amount of the judicial lien from the equity as shown below:

| | |
|---|---|
| Equity | $76,487.00 |
| Judicial lien | −6,394.41 |
| Net equity | $70,092.59 |

Since the deduction leaves equity which is greater than the available exemption, there is no impairment of debtor's homestead exemption. Mission Federal's judicial lien shall remain.

### CONCLUSION

Section 522(f)(1) is unavailable to avoid the judicial lien of Mission Federal. Debtor's homestead exemption of $30,000 is unimpaired by the judicial lien.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Counsel for Mission Federal is directed to file with this court an Order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.