

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>THOMAS A. PEREZ,<br>         Debtor. | BAP No. CC-20-1280-LFT<br><br>Bk. No. 1:20-bk-10910-VK |
| NANCY J. ZAMORA, Esquire, Chapter 7<br>Trustee,<br>         Appellant,<br>v.<br>THOMAS A. PEREZ,<br>         Appellee. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Victoria S. Kaufman, Bankruptcy Judge, Presiding

APPEARANCES:
Toan B. Chung of Roquemore, Pringle & Moore, Inc. argued for appellant;
Stephen Parry of Law Offices of Stephen Parry argued for appellee.

Before: LAFFERTY, FARIS, and TAYLOR, Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

## INTRODUCTION

Chapter 7[1] trustee Nancy J. Zamora ("Trustee") appeals the

bankruptcy court's order overruling her objection to debtor Thomas

_____

[1] Unless specified otherwise, all chapter and section references are to the

1

Perez's homestead exemption. Pre-petition, on the advice of counsel, Debtor granted his sister, Maria Perez, a third position lien ("Perez DOT") on his residence. At the § 341(a) meeting, Trustee questioned Debtor about the Perez DOT and informed him that she intended to have a realtor look at his house, but she did not mention the Perez DOT's potential avoidability. Debtor then hired new counsel and promptly took steps to have the Perez DOT reconveyed. He also amended his exemptions to claim a $175,000 homestead exemption.

Trustee objected on the ground that, under § 522(g), Debtor was not entitled to a homestead exemption because the Perez DOT had been avoided and recovered for the estate due to Trustee's efforts. While it was not necessary that Trustee commence a preference action to bar Debtor from asserting an exemption, we agree with the bankruptcy court's determination that the limited Trustee action in this case falls below the level required to invoke § 522(g).

We AFFIRM.

**FACTS**

**A.    Pre-Petition Events**

In 2010, Debtor and his wife recorded a Declaration of Homestead on their residence in North Hills, California ("Residence"). At some point, the couple experienced financial difficulty, and, by early 2019, Debtor was

---

Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

receiving threatening calls from collection agencies. He consulted with a company called "Legal Experts" for advice on obtaining a reverse mortgage on the Residence but was advised he would not qualify because of his low credit scores.

An individual named Moshe at Legal Experts then discussed bankruptcy with Debtor, but he advised Debtor he did not "qualify" for bankruptcy because there was too much equity in the Residence.[2] Moshe suggested that because Debtor's sister Maria had loaned Debtor money in the past, they could create a third mortgage on the Residence in favor of Maria and wait a year before filing the case. Debtor and Maria executed the necessary paperwork; the Perez DOT, which stated that it secured a debt of $200,000, was recorded on May 30, 2019.

In March 2020, Debtor signed his bankruptcy petition and supporting documents at Legal Experts' office. The documents were to be held by Legal Experts and not filed until a year after the recording of the Perez DOT. Legal Experts, however, filed the petition early, on May 14, 2020.

## B.    Post-Petition Events

On Debtor's initial schedules, he listed the Residence with a value of $625,000 and encumbrances totaling $597,503, including the $200,000 Perez

---

[2] There is no evidence in the record that "Moshe" is an attorney. Legal Experts' business card references "Law Offices of Steven L. Kimmel" and shows Moshe Bibiyan's title as "Executive Director." Debtor did not speak to Mr. Kimmel before his bankruptcy was filed, but Mr. Kimmel appeared telephonically at the § 341(a) meeting of creditors.

DOT. Despite having recorded a homestead exemption ten years earlier, he did not claim any homestead exemption on Schedule C. Instead, he claimed a "wild card" exemption of $27,497 on the Residence pursuant to California Code of Civil Procedure § 703.140(b)(5) and § 522(b)(3).

At Debtor's § 341(a) meeting on June 19, 2020, Trustee asked questions about the Perez DOT and requested copies of pertinent documents. Specifically, she asked for information regarding when Maria funded the loan, why Debtor recorded the deed of trust when he did, and whether Debtor had made any payments to Maria. Trustee also told Debtor that she intended to have a realtor view the Residence. That same day, Trustee filed a Notice of Assets; a week later, she filed an application to employ a real estate broker to market the Residence. Neither document referenced the Perez DOT or its potential avoidability.

After the § 341(a) meeting, Debtor realized that he was in "trouble" and consulted Legal Experts for advice. He was told to hire another attorney. Less than two weeks after the § 341(a) meeting, Debtor hired attorney Stephen Parry, who advised Debtor to have Maria reconvey the Perez DOT immediately. On the same date, Mr. Parry filed amended schedules on Debtor's behalf. The amended Schedule A valued the Residence at $599,000 (based on the value established by Trustee's broker) and included a notation that the Perez DOT was an avoidable preference.

On amended Schedule C, Debtor claimed a homestead exemption of $175,000.[3]

A few days later, on July 2, 2020, Mr. Parry emailed Trustee to inform her that he had substituted into the case and that amended schedules had been filed. He also asked whether Trustee needed any additional documents. Later that day, Trustee responded, stating, among other things, that the Perez DOT was an avoidable transfer, to which Mr. Parry responded that he expected to have the Perez DOT reconveyed within a week to ten days. Mr. Parry emailed Trustee the next day advising her of the status of the reconveyance:[4]

> We expect that Mr. Perez's sister will be meeting with a title company today to execute a Declaration of Lost Original Note for the filing of a Full Reconveyance of the 3rd Trust Deed Lien. The title company will record the document and will be requested to provide a Certified Copy [of] the Reconveyance. We will provide that to you as soon as we receive it. She is not fighting the fact that it constitutes an avoidable transfer.

Maria executed the reconveyance deed on July 8, 2020, and it was recorded July 15, 2020.

---

[3] Debtor claimed the enhanced homestead exemption based on: (1) his wife's age as of the petition date; and (2) his disability.

[4] All relevant emails were not included in the parties' excerpts. Accordingly, we have exercised our discretion to take judicial notice of the dockets and imaged papers filed in Debtor's bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

In the meantime, on July 6, Trustee filed an adversary proceeding against Maria seeking avoidance of the Perez DOT. She also filed an application to employ counsel to represent her in the adversary proceeding.

A few days later, Debtor filed a motion to convert his case to chapter 13, along with another set of amended schedules. The bankruptcy court denied the motion to convert. It also tentatively addressed the issue of Debtor's homestead exemption, which had been raised in the parties' conversion briefing: "[B]ecause Ms. Perez voluntarily reconveyed her deed of trust, obviating the need for legal action by the Trustee, the Court questions whether there are sufficient grounds to deny Debtor his homestead exemption." The bankruptcy court then ordered the parties to mediation regarding the exemption.

Mediation proved unsuccessful, and Debtor thereafter filed a motion for declaratory relief that Trustee was precluded from objecting to the exemption. Alternatively, Debtor requested dismissal of the case and/or the filing of a no-asset report. A few days later, Trustee filed an objection to Debtor's homestead exemption, asserting that, under § 522(g)(1), Debtor was barred from claiming any homestead exemption because the avoidance and recovery of the Perez DOT resulted from Trustee's efforts.

After hearing argument on both motions, the bankruptcy court denied Debtor's motion and overruled Trustee's objection to Debtor's homestead exemption.

Trustee timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in overruling Trustee's objection to Debtor's homestead exemption?

## STANDARDS OF REVIEW

Whether the debtor has the right to claim an exemption is a question of law that we review de novo. *Elliott v. Weil (In re Elliott)*, 544 B.R. 421, 430 (9th Cir. BAP 2016). When we conduct a de novo review, "we look at the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered, giving no deference to the bankruptcy court's determinations." *Charlie Y., Inc. v. Carey (In re Carey)*, 446 B.R. 384, 389 (9th Cir. BAP 2011).

The bankruptcy court's factual findings underlying the court's legal conclusions are reviewed for clear error. *Id.* A factual finding is clearly erroneous if illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

The Bankruptcy Code permits a debtor to claim an exemption in property "that the trustee recovers" under §§ 510(c)(2), 542, 543, 550, 551, or 553, if certain conditions are met. § 522(g)(1).[5] Specifically, the property recovered must have been involuntarily transferred by the debtor, and the transfer must not have been concealed by the debtor. *See id.*

Accordingly, to prevail on an objection to an exemption under § 522(g)(1), the trustee must present evidence that (1) the debtor transferred property in such a manner as to invoke the trustee's avoidance powers; (2) either the transfer was voluntary or the debtor knowingly concealed the transfer; and (3) the property was returned to the estate as the result of the trustee's efforts. *Hitt v. Glass (In re Glass)*, 164 B.R. 759, 765 (9th Cir. BAP 1994), *aff'd*, 60 F.3d 565 (9th Cir. 1995). In this appeal, the parties do not dispute that the transfer was voluntary. And although Trustee takes the position that Debtor concealed the Perez DOT because he did not disclose it on his Statement of Financial Affairs, he did disclose it in his schedules.[6]

---

[5] Section 522(g)(1) of the Bankruptcy Code provides that a debtor may claim an exemption in property

> that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if--
>> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
>> (B) the debtor did not conceal such property[.]

[6] *Cf. Stevens v. Whitmore (In re Stevens)*, 617 B.R. 328 (9th Cir. BAP 2020), *appeal docketed*, No. 20-60044 (9th Cir. Sept. 11, 2020) (assets listed in statement of financial

In any event, because the transfer was voluntary, Debtor would not be entitled to an exemption in the Residence if the Perez DOT was reconveyed as a result of Trustee's efforts.

Few cases address exactly what efforts by the trustee are sufficient to constitute "recovery" of the property under the specified code sections. Courts examining the issue have stopped short of requiring that the trustee obtain a final judgment avoiding and/or recovering the subject transfer. This Panel has held that the trustee's efforts need not include obtaining a final judgment; nor must the trustee even file an adversary proceeding. *In re Glass*, 164 B.R. at 765. Instead,

> where a debtor voluntarily transfers property in a manner that triggers the trustee's avoidance powers or the debtor knowingly conceals a prepetition transfer or an interest in property, and such property is returned to the estate as a result of the trustee's actions directed toward either the debtor or the transferee, the debtor is not entitled to claim an exemption under § 522(g)(1).

*Id.* at 764-65.

In *Glass*, the debtor had quitclaimed his residence to his son "for love and affection" shortly before filing his chapter 7 case, and he failed to disclose the transfer on his schedules. *Id.* at 760. At the § 341(a) meeting, a creditor informed the trustee of the transfer, and the trustee instructed the debtor to amend his schedules to disclose the transfer. *Id.* A few weeks

---

affairs are not "scheduled" for purposes of technical abandonment unless they are also

later, the trustee filed an objection to the debtor's homestead exemption, stating that he intended to seek avoidance of the transfer under § 548. *Id.* at 760-61. Three days later, the debtor's son quitclaimed the residence back to his father. *Id.* at 761. The BAP held that the trustee's actions resulted in the recovery of the property:

> We further conclude that the Trustee's actions toward the Debtor directly, and the Debtor's son indirectly, were instrumental in the return of the property to the estate. . . . Since the Debtor and the transferee are father and son and the transfer occurred on the heels of the Objection, the only reasonable inference to be drawn is that the Trustee's promise of legal action had a coercive effect on father and son, directly resulting in the return of the property to the estate.

*Id.* at 765.

And we recently held in an unpublished decision that a trustee's filing of an application to employ counsel, which stated that counsel was being hired to pursue avoidance claims to regain estate assets--after which certain transferred property was returned to the debtor--was sufficient action to warrant sustaining the trustee's § 522(g)(1) objection to debtor's claimed exemption. *Guthrie v. Stadtmueller* (*In re Guthrie*), BAP No. SC-15-1390-FYJu, 2017 WL 431398, at *7 (9th Cir. BAP Jan. 31, 2017).

These cases stand for the proposition that a trustee's threat or indication that she intends to invoke her avoidance powers to recover

---

included on the schedules).

property for the estate, which results in the recovery of the property, is sufficient to constitute recovery by the trustee under § 522(g).

On the other hand, where a trustee's action is not the cause of the recovery, § 522(g) does not bar an exemption in the recovered property. *See In re Leach*, 595 B.R. 841 (Bankr. D. Idaho 2018). In *Leach*, the debtors purchased a 2008 Subaru Impreza for their daughter to take to college. The daughter later got married, kept the vehicle, and began paying the insurance and registration, but the debtors never transferred title to her. Upon filing a chapter 7 bankruptcy, they listed the vehicle on their schedules, noting that their daughter had possession, and they claimed an exemption in the vehicle under Idaho law. But they erroneously described the vehicle as a 2000 model. When the error came to light at the § 341(a) meeting, the trustee asked the debtors to amend their schedules. Shortly thereafter, and unbeknownst to the trustee, the daughter returned the car to the debtors. But the debtors did not amend their schedules until nearly two months later, after the trustee had made a written demand for turnover. The trustee then filed an objection to the debtors' claim of exemption pursuant to § 522(g).

Under these circumstances, the bankruptcy court overruled the trustee's objection to the debtors' exemption in the vehicle. The court interpreted the term "recovers" in § 522(g) to "not include this instance, where Trustee's actions did not result in the transferred interest being returned to the estate, and in fact occurred subsequent thereto." *Id.* at 846.

11

Trustee directs us to several cases from outside the Ninth Circuit in support of her argument that the legal standard focuses less on the extent of the trustee's actions and more on what the trustee's actions accomplished; i.e., property was recovered and the trustee had something to do with it: *In re Mickens*, 575 B.R. 797 (Bankr. W.D. Mich. 2017), *aff'd sub nom. Hagan v. Mickens*, 589 B.R. 594 (W.D. Mich. 2018); *Russell v. Kuhnel (In re Kuhnel)*, 495 F.3d 1177 (10th Cir. 2007); *In re Hicks*, 342 B.R. 596 (Bankr. W.D. Mo. 2006); and *In re Ulrich*, 203 B.R. 691 (Bankr. C.D. Ill. 1997). We have no quarrel with this premise, as it is consistent with the language of § 522(g), but we decline to read these cases as supporting a different result in the appeal before us. Although some of these cases contain language suggesting a relatively loose standard in interpreting what constitutes a trustee's recovery of a property interest, none are factually analogous nor are they binding on this Panel.

In *Mickens*, three days before filing their chapter 7 case, the debtors-- on the advice of their bankruptcy counsel--executed and recorded a quitclaim deed transferring their residence, which they owned as joint tenants with rights of survivorship, to themselves as tenants by the entireties. In the bankruptcy, they claimed a homestead exemption under Michigan law. The trustee obtained a judgment avoiding the pre-petition transfer as constructively fraudulent. The trustee then objected to the homestead exemption under § 522(g). In determining whether to sustain the objection, the bankruptcy court analyzed the relevant case law

12

(including *Glass*), and concluded, "[a]s these cases make clear, the extent of the actions taken by the trustee are not the most important focus of the § 522(g) analysis; the more significant question is what those actions accomplished." *In re Mickens*, 575 B.R. at 810. But the bankruptcy court ultimately overruled the trustee's objection because it found that in the case before it, the debtors retained ownership and possession of the property both before and after the transfer, and there was nothing to "get back" for the estate through a § 550 recovery. *Id.*[7]

In *Hicks*, the bankruptcy court sustained the chapter 7 trustee's § 522(g) objection to debtors' claimed exemption in a vehicle where the creditor had conceded its lien was unperfected, without any significant action on the part of the trustee. The court noted that under the Bankruptcy Code, the trustee automatically steps into a position having priority over a creditor, and that this was sufficient to constitute recovery under § 522(g):

> [I]n some cases, where the lien is patently unperfected, the
> creditor will yield to the trustee without much effort on the part

[7] *Mickens* suggests another problem with Trustee's argument. Because Debtor recorded a pre-petition declaration of homestead, there was no equity available to a judgment creditor when he executed the Perez DOT. In this sense, Trustee was not recovering an otherwise available source of payment for creditors. Instead, she attempted to bar Debtor from using a pre-petition homestead declaration. Even if we assume her limited actions constituted a recovery, we cannot say that she got back anything. And the plain language of § 522(g) is not supportive either. It speaks in terms of an exemption that could have been made "had the property not been transferred." But the recordation of the Perez DOT did not negate the legal effect of the recorded homestead. In a typical case, we deal with California's automatic homestead, which arises on the petition date. In such a case, a pre-petition trust deed invades equity available to a foreclosing creditor. Not so here.

of the trustee. I agree with those courts that have held that such property comes into the estate pursuant to the trustee's powers, even if the trustee seems relatively passive in causing that to happen. In effect, so long as the trustee asserts the estate's interest in the property when faced with an unperfected or otherwise avoidable lien, the property has been recovered by the trustee, and the debtor may not claim such property as exempt.

*In re Hicks*, 342 B.R. at 600. But this analysis seems to be limited to the situation where a creditor failed to perfect a security interest:

> [W]here the debtor did grant a security interest in property, the debtor's rights are not determined by whether the trustee actually was forced to bring an action to "recover" the property for the benefit of the estate. Otherwise, in a case such as this one, the trustee would always be required to file an adversary action against the creditor to do so. Requiring trustees to do so, when the creditor concedes that it has an unperfected lien, would result in unnecessary litigation and serve no useful purpose. Therefore, the trustee need only take such steps as are necessary to either have the creditor concede its lien is unperfected or otherwise avoidable, or to obtain a judgment so finding.

*Id.* at 601.[8]

---

[8] The other two cases cited by Trustee have limited applicability to the issue before us. In *Ulrich*, the court stated that in the context of objections under § 522(g), "[t]he important point is that the Trustee must be instrumental in the recovery of the property." 203 B.R. at 693. And *Kuhnel* primarily involved the question of whether Rule 4003's time limit for filing objections to exemptions applies to objections brought under § 522(g). The Tenth Circuit concluded that it does not. 495 F.3d at 1181-82.

These cases do not persuade us that the standard for what constitutes a recovery by a trustee should be whittled down to a sequencing exercise, with little to no regard for whether the trustee's actions **caused** the recovery. We hold that our decision in *Glass* established a floor for determining what constitutes a recovery by the trustee: an explicit statement by the trustee to the debtor that the trustee intends to recover the property interest for the estate. In other words, the debtor must be put on notice by an affirmative act or statement of the trustee that the transfer is avoidable and/or recoverable under the Bankruptcy Code and that the trustee intends to take action to recover the property interest. Whether the trustee's conduct meets this standard is a question of fact. This standard is consistent with the plain language of § 522(g), which references recovery under specific code sections.[9] It is also consistent with the bankruptcy policy of construing exemptions liberally. *See In re Glass*, 164 B.R. at 764.

Under this standard, the record supports the bankruptcy court's finding that Trustee's actions did not result in the recovery of the property interest, i.e., the reconveyance of the Perez DOT. Although the § 341(a) meeting transcript contains only Trustee's questions and not Debtor's

---

[9] The statute specifies that the property interest must be recovered under § 510(c)(2) (lien securing a subordinated claim); § 542 (turnover of property of the estate other than that held by a custodian); § 543 (turnover of property of the estate from a custodian); § 550 (recovery of avoided transfer of property interest); § 551 (automatic preservation of transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) or lien void under section 506(d)); and § 553 (recovery of offset from creditor).

answers, it indicates that Trustee simply asked about the Perez DOT, as demonstrated by the following verbatim excerpt from the transcript:

> Has she loaned you money?
> How much?
> Ok, when did she loan you the money?
> Ok, so five to six years ago. Was it over more than one year or was it all in a lump sum?
> Ok, and do you have a promissory note that you signed that you owe her money? Alright [sic], I need a copy of that promissory note, Mr. Kimmel.
> Ok, do you know when that note, that promissory note, is dated Mr. Perez? Ok, and you do have a copy of the note, correct?
> Ok, I have a record that you then agreed and signed a 3rd deed of trust and it's recorded against the property and that was done less than a year ago, is that correct?
> Why did you agree to the deed of trust to secure the loan with the real property?
> Ok, but originally when she loaned it to you, you didn't sign a deed of trust, correct? Ok, what changed that you recorded it last May?
> Is that when it was recorded in May of 2019?
> Ok, why was that done at that time? Ok, ok alright.
> Have you made any payments on the loan to your sister?
> Ok alright. According to the public records I have that the deed of trust was recorded on May 30, 2019.

Trustee also asked for copies of the promissory notes and deeds of trust on the Residence, and she indicated she wanted to schedule a time for a realtor to "come and look at the house." Shortly after the meeting, Debtor contacted Legal Experts, and he hired Mr. Parry less than two weeks later.

As noted, Mr. Parry immediately advised Debtor to get the Perez DOT reconveyed. He also filed amended schedules that omitted the Perez DOT and claimed the enhanced homestead exemption. It was not until two days later that Trustee mentioned to Mr. Parry her intent to avoid the Perez DOT, to which he replied that he expected the Perez DOT to be reconveyed within the next week to ten days.

A bankruptcy court may find that simply questioning a debtor regarding a particular transfer, without any mention of its possible recoverability, is not sufficient action by a trustee to constitute recovery of an asset. Here, Trustee's questions were investigatory only. She did not state at the § 341(a) meeting that she thought the Perez DOT was avoidable or that she intended to take action to recover it. Debtor initiated the reconveyance of the Perez DOT before Trustee mentioned its possible recoverability. Accordingly, the bankruptcy court did not err in finding that Trustee did not recover the property for the estate within the meaning of § 522(g).

Trustee argues that her questioning of Debtor at the § 341(a) meeting put him on notice of the "undisclosed transfer" and the "fabricated deed" and resulted in his taking steps to unwind the transfer. As such, she contends that her actions were sufficient for us to conclude that she recovered the transferred interest for the estate. But, as discussed above, Trustee did not tell Debtor that the Perez DOT was potentially avoidable or recoverable for the estate. She simply asked questions about the Residence

and stated her intent to have a realtor come and look at it. Debtor's reaction that he thought he was in "trouble" plausibly could have referred to his concern that he might lose his house; it is not a foregone conclusion that he knew at the time that the Perez DOT was an avoidable transfer. The bankruptcy court's findings thus were not clearly erroneous.

To the extent possible, debtors should be encouraged to voluntarily correct errors before the trustee has to expend estate resources to force them to do so. That is exactly what happened here. Although Trustee did file an adversary proceeding seeking to avoid and recover the Perez DOT, it was arguably unnecessary given that Debtor's counsel had informed her just days earlier that the Perez DOT was in the process of being reconveyed. And it is clear from the record that Debtor had received bad advice from Legal Experts. He had a recorded homestead declaration and was eligible for the enhanced homestead, which would have protected his Residence even without the Perez DOT.

One last point: in her reply brief, Trustee argues that Debtor's "unclean hands" preclude him from obtaining any equitable relief, citing the Ninth Circuit opinion in *Glass*, in which the court of appeals observed that a debtor has a duty to do equity before he can claim his right to exemptions. 60 F.3d at 570. Trustee did not make this argument to the bankruptcy court; thus, we need not consider it. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). Moreover, the Supreme Court's intervening decision in *Law v. Siegel*, 571 U.S. 415 (2014)

18

(bankruptcy court's equitable powers may not override specific Code sections), appears to cast doubt on the viability of this argument.

## CONCLUSION

For these reasons, we AFFIRM.